The defendant was convicted of rape in the first degree. The Court of Criminal Appeals affirmed his conviction. This Court granted the writ to determine whether the prosecutor, in his closing argument, improperly commented on the defendant's failure to testify. The prosecutor stated, "He hasn't told you he didn't do it. He hasn't told you. . . . He gave a statement." At that point, the defendant's counsel made a general objection, and a bench conference was held outside the hearing of the court reporter.
Although it appears that these comments by the prosecutor were highly irregular and prejudicial, I am of the opinion, after reviewing the record, that the comments are not so prejudicial that this Court should reverse the defendant's conviction. The prosecutor, on the record, explained his comments and contended that he was not commenting on the defendant's silence, but was merely reiterating the fact that the defendant had confessed to having had sexual *Page 651 
intercourse with the victim. There was evidence that the defendant had, in fact, made a statement to the arresting officer indicating that the intercourse was consensual, and evidence of this statement was admitted. (See Appendix, consisting of pages 162-163 of the reporter's transcript.)
In view of these facts, I believe that the prosecutor's explanation of his comment, coupled with the defendant's failure to make a specific objection and to request a curative instruction, shows that the statements by the prosecutor were not reversible error. It is also noteworthy that the trial judge gave a detailed jury instruction concerning the defendant's right not to testify. I would quash the writ.
STEAGALL, J., concurs.
 APPENDIX
"Q [Bob Becher, Assistant District Attorney:] Did he understand what you told him?
"A [Mark Thompson, Investigator, Montgomery Sheriff's Department:] He advised me that he did.
"Q At that time, did he give you a statement?
"A He gave me his version of what happened that night.
"Q What did he tell you was his version of what happened that night?
"A Do you want me to read exactly what I wrote or summarize it?
"Q When did you make your report?
"A The following morning.
"Q Would it help you to be able to tell the jury just what you remember he said without adding anything or leaving anything out, if you refer to your report?
"A I'll just read it.
"Q What I'm asking you, would that help you to be able to refer to it?
"A Yes, sir.
"Q So that you don't tell the jury anything that wasn't said?
"A Yes, sir.
"Q You want to tell them just what it was that you wrote down?
"A Yes, sir.
"Q What you wrote down is what he told you?
"A Yes, sir.
"Q What is it he told you?
"A At about 3:00 p.m. the same date, 7-13-88, this writer verbally advised Robert Chuck Williams, white male, of his constitutional rights. He stated that he understood his rights. During questioning Williams stated to this writer that he had seen three people walking toward the bridge on 31 North, two white males and a white female. Williams stopped and asked if they needed a ride. The males said they did not but that the female did. Williams said he stopped at the Bee Line Station across the bridge in Autauga County and purchased some cigarettes, and that the female had given him ten dollars to do so. From there he took her home. At that point the female reached over and grabbed him between his legs. They exited the car and he placed the Nasty Feet T-shirt on the hood and they had sex at that point. Mr. Williams — At that point I inquired of Mr. Williams if he would consent to a search of his vehicle, an Oldsmobile, tag number 4AD0273. He signed a consent form at 3:35 p.m. the same date. And then it goes into what we found in the search.
"Q So he said he placed the Nasty Feet T-shirt on the hood and had sex with Ms. . . . on the hood?
"A Yes, sir.
"Q And then what did he say happened after that?
"A They exchanged telephone numbers and he left.
"Q That was all that you remember him telling you?
"A Yes, sir.
"Q Did you write down everything that he told you?
"A To the best of my memory, yes, sir.
"Q This was done the very next day?
"A Yes, sir." *Page 652